**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYMON MICKIANGELO BERRY, III, ) | No. C 06-3795 MMC (PR) |
| Plaintiff, ) | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO SET PRETRIAL CONFERENCE AND TRIAL DATE; REFERRING CASE FOR SETTLEMENT PROCEEDINGS** |
| v. ) | |
| MICHAEL S. EVANS, Warden, et al., ) | |
| Defendants. ) | |
| _____ ) | **(Docket Nos. 57, 61)** |

On June 16, 2006, plaintiff, a California prisoner proceeding pro se, filed the above-titled civil rights action under 42 U.S.C. § 1983, claiming prison officials at Salinas Valley State Prison ("SVSP") acted with deliberate indifference to his serious medical needs in 2005. Following service of the complaint, the parties filed cross-motions for summary judgment. By order filed July 24, 2008, the Court denied defendants' motion for summary judgment, finding a reasonable inference could be drawn from plaintiff's evidence that defendants acted with deliberate indifference to plaintiff's serious medical needs by failing to provide him with timely and proper dental care. (Order, filed July 24, 2008, at 8:11-13.) With respect to plaintiff's cross-motion for summary judgment, the Court denied the motion without prejudice, finding a ruling thereon would be premature in light of defendants' request for additional time to engage in discovery to oppose the motion. (Id. at 8:21-26.)

After the completion of discovery, plaintiff filed a renewed motion for summary judgment; defendants have opposed the motion and plaintiff has filed a reply. For the

reasons stated below, the Court will deny plaintiff's motion and refer the parties for settlement proceedings.

### BACKGROUND[1]

As noted, the complaint concerns events that took place in 2005, when plaintiff was incarcerated at SVSP. The gravamen of the complaint is plaintiff's claim that he injured his tooth and was denied proper dental treatment for a period of fourteen days, during which time he suffered severe pain. The named defendants, all employed at SVSP, are Warden Michael S. Evans ("Evans"), Chief Dental Officer John Adamo ("Adamo"), Health Care Manager Charles D. Lee ("Lee"), and Medical Technical Attendant ("MTA") J. Armstrong ("Armstrong").[2]

Plaintiff claims defendants acted with deliberate indifference to his serious medical needs based on: (1) defendants' failure to personally respond to plaintiff's requests for care; and (2) the supervisory defendants' failure to hire and have available a sufficient number of dentists capable of responding to inmates' dental emergencies and acute dental care needs, with knowledge that such failure would result in a substantial risk of serious harm to prisoners such as plaintiff who sustain a serious dental injury.

Defendants do not dispute that plaintiff suffered an injury that caused him severe pain. They argue, however, that they did not act with deliberate indifference because they appropriately responded to plaintiff's requests for care as soon as they learned of his injury and the problem was resolved within seven days.

In support of their assertions, the parties present the following evidence.

---

[1] The following facts are derived from plaintiff's verified declaration and attached exhibits filed in support of his motion for summary judgment and from defendants' declarations and exhibits filed in support of their opposition.

[2] Plaintiff initially also named as a defendant to this action MTA A. Johnson. When Johnson could not be located for purposes of service, however, plaintiff moved to voluntarily dismiss Johnson as a defendant. The motion was granted on October 30, 2008. (Order, filed Oct. 30, 2008, at 2:26-3:2.)

2

A.     Plaintiff's Injury and Defendants' Response

In January 2005, plaintiff injured his tooth while eating a piece of meat. The exact date is disputed; plaintiff presents evidence that the injury occurred on January 19, 2005[3] (Decl. Waymon M. Berry, III, Supp. Mot. Summ. J. ("Berry Decl.") ¶ 2), while defendants present evidence suggesting a later date, specifically, January 20, based on statements attributed to plaintiff, as contained in treatment notes. (Decl. John Adamo Opp'n Mot. Summ. J. ("Adamo Decl.") ¶ 14 & Ex. 8.)

It is undisputed that the first time plaintiff was seen by a medical professional for the subject injury was on January 23. The parties dispute, however, whether plaintiff required medical care before that date, and, if so, whether defendants were aware of plaintiff's need for care and/or had in place a system for plaintiff to obtain such care. In that regard, plaintiff presents evidence that from the time he was injured on January 19 until he was seen by a doctor on January 23, he made numerous unsuccessful attempts to obtain medical care, including: asking a nurse for help; filling out a "sick-call slip," which an MTA refused to pick up; and repeatedly asking correctional officers to help him obtain access to a doctor or dentist because he was in severe pain. (Berry Decl. ¶¶ 3-9.) Defendants, by contrast, present evidence showing they were not aware of plaintiff's injury until he was seen by a doctor on January 23, and that plaintiff did not comply with proper prison protocol for requesting medical care, in that he failed to complete the required form request for health care services and to either return it to correctional staff or place it in a designated locked box. (Adamo Decl. ¶¶ 8-11, Ex. 5 & 6.)

Additionally, although the parties agree plaintiff was seen on January 23 by Dr. Wong, a medical doctor, the parties disagree as to whether plaintiff should have been seen by a dentist at that time. According to plaintiff, he was informed by staff that no dentist was available, Dr. Wong did not physically examine him, and Dr. Wong stated he did not need to do so because he was not a dentist and the only thing he could do for plaintiff would be to

---

[3]Unless otherwise noted, all events referenced in this order took place in 2005.

3

1 prescribe ibuprofen. (Berry Decl. ¶ 9.) Defendants agree plaintiff was prescribed ibuprofen
2 but contend such care was medically appropriate.

3 The parties do not dispute that after plaintiff saw Dr. Wong, plaintiff continued to
4 experience pain from the injured tooth. Additionally, plaintiff presents the following
5 evidence: on January 23, the same day he was seen by Dr. Wong, the pain was so severe that
6 he asked defendant MTA Armstrong to provide him with access to a dentist and to process an
7 emergency medical appeal plaintiff had prepared, but that Armstrong refused to do so and
8 would only provide plaintiff with some ibuprofen after being directed to do so by a
9 correctional sergeant (id. ¶ 10); plaintiff then complained to an emergency room nurse, which
10 resulted in a telephone call being made to the chief physician and surgeon who, without
11 seeing plaintiff, prescribed Motrin and said plaintiff should be seen by a dentist on
12 January 24 (id. ¶ 11). It is undisputed that plaintiff was not seen by either by either a doctor
13 or a dentist on January 24; rather, according to plaintiff, on that date MTA Armstrong again
14 refused a request from plaintiff for dental assistance, and plaintiff was taken to see a dentist
15 on January 25 only after he complained about his pain to a correctional officer (id. ¶¶ 10-
16 12).

17 It is undisputed that plaintiff first saw a dentist, Dr. Robinson, on January 25, and at
18 that time Dr. Robinson observed part of a filling had broken off of plaintiff's tooth, the tooth
19 had deep caries, and there appeared to be some nerve damage. Additionally, it is undisputed
20 that Dr. Robinson provided temporary care for the injury and scheduled plaintiff for a follow-
21 up dental appointment on January 28. What is disputed by the parties is the nature of the
22 care provided by Dr. Robinson and the reason why he did not fully treat the injury when he
23 initially saw plaintiff. According to plaintiff, Dr. Robinson told plaintiff there was not
24 enough time to properly attend to the matter on that date and, consequently, Dr. Robinson
25 cleaned the tooth, injected plaintiff with a painkiller, gave him some ibuprofen, and
26 scheduled him to come back in a few days when there would be sufficient time to treat the
27 injury. (Id. ¶ 12.) According to defendants' evidence, Dr. Robinson took an x-ray of the
28 tooth, removed the decay, placed a temporary filling on the tooth, prescribed 880 milligrams

4

of ibuprofen every six hours for the next four days (Adamo Decl. ¶ 13 & Ex. 8), and scheduled plaintiff for a follow-up appointment on January 28 "to attempt to fill after tooth (or I/M [inmate]) settle[d] down" (id. Ex. 8).

The parties do not dispute that within a few hours after plaintiff was seen by Dr. Robinson the local anesthetic wore off and the ibuprofen provided no relief. According to plaintiff's additional evidence: because of his extreme pain he contacted a correctional officer and requested to be seen immediately by Dr. Robinson or another doctor, that the correctional officer called the clinic and was told there was no one available to help plaintiff but that plaintiff might be seen within the next few days, and that with the correctional officer's permission, plaintiff called his wife in Sacramento and she then called Warden Evans. (Id. ¶ 13.) It is undisputed that Evans received the call but did not attempt to contact plaintiff or ensure that he was receiving dental care. (Id. ¶ 13 & Ex. E ("Evans Response to Interrogatories" at 7:5-10).) It is also undisputed that on January 26 plaintiff's wife called both Chief Dental Officer Adamo and Health Care Manager Lee, complaining that plaintiff had injured his tooth, that she was told plaintiff had been treated on January 25, and that neither Adamo nor Lee took any further steps to ensure plaintiff would receive emergency dental care. (Id. ¶ 13 & Ex. F ("Second Level Appeal Response" signed by Adamo & Lee, dated Apr. 26, 2005).)

The parties further agree that plaintiff was not seen on January 28 for the follow-up appointment that had been scheduled by Dr. Robinson and was not seen by a dentist until February 1. Defendants present evidence, however, that plaintiff could not be seen on January 28 because his housing unit, Facility A, was on lockdown. (Adamo Decl. ¶ 14 & Ex. 8.) Plaintiff does not dispute the facility was on lockdown, but argues he nonetheless could have been provided with emergency dental care.

Lastly, the parties are in agreement that on February 1 plaintiff was again seen by Dr. Robinson, who determined there was a piece of bone lodged under the gum near the tooth, and that the tooth had become abscessed and needed to be extracted immediately; consequently, Dr. Robinson performed the extraction at that time. (Berry Decl. ¶ 14 & Ex.

5

1  G.)

2  B.    Systemic Shortage of Available Dentists

3  Plaintiff presents the following evidence in support of his claim that his inadequate
4  dental care resulted from the failure of SVSP prison and medical officials to provide enough
5  dentists to attend to the emergency and acute dental needs of inmates:

6  On January 24, 2005, plaintiff filed an inmate appeal, complaining that he had not
7  been provided adequate dental care. On March 10, plaintiff was interviewed by MTA Lauber
8  about the appeal. During the interview, Lauber told plaintiff the reason plaintiff was not
9  promptly seen by a dentist after he injured his tooth was because defendants Evans, Adamo
10 and Lee had not hired enough dentists to care for the SVSP inmate population and had not
11 contracted with local dentists to cover emergency situations. (Berry Decl. ¶ 15.)

12 After plaintiff's appeal was denied at the Director's level of review, plaintiff filed a
13 state habeas petition in the Superior Court of Monterey County, alleging that the actions of
14 SVSP prison officials in refusing to provide him with prompt dental care amounted to cruel
15 and unusual punishment. Plaintiff sought equitable relief directing prison officials to comply
16 with their legal obligations and the rules and regulations promulgated by the California
17 Department of Corrections and Rehabilitation ("CDCR") with respect to the provision of
18 dental and medical care. On May 30, 2006, the Superior Court granted the petition, finding
19 as follows:

> Prison officials appear to have been lax in adhering to [CDCR][4] rules by failing to provide Petitioner with access to any dental treatment for approximately seven (7) days after his injury, and failing to resolve the matter for eleven (11) days. Petitioner's claim of considerable pain suffered from the date of his injury until the date of extraction is consistent with the documentary evidence of his complaints to prison staff of severe pain, a swollen left jaw, pain extending through the left ear, and an abscessed tooth. The Court reminds prison officials to follow [CDCR] rules and regulations for the treatment of acute medical conditions.

---

[4]The state court opinion refers to the CDCR as the "CDC," the acronym by which the California Department of Corrections previously was known. The Department's official title now includes the word "Rehabilitation." The Court, for purposes of consistency, herein refers to the Department as the "CDCR."

6

1  (Id. ¶ 16 & Ex. J.)

2  On August 21, 2006, U.S. District Judge Jeffrey S. White approved a settlement
3  agreement in the prisoner class action Perez v. Tilton, No. C 05-5241 JSW  (N.D. Cal. 2005),
4  pertaining to the provision of dental care to inmates in all California state prisons.  (Pl.'s
5  Motion to Take Judicial Notice & Exs. A (Order Granting Motion for Final Approval of
6  Settlement) & B (Amended Stipulation and Order) (filed Aug.  21, 2006).)[5]  Specifically, the
7  Perez action was filed in December 2005, alleging that over the course of the previous four
8  years the CDCR had failed to provided constitutionally adequate dental care to inmates, in
9  violation of the Eighth Amendment.  (Ex. B at 2:1-22.)  The settlement agreement requires
10 the CDCR to meet the minimal level of dental care required under the Eighth Amendment by
11 implementing systemic improvements in the delivery of dental care to inmates, including
12 specific improvements related to the timely provision of emergency dental care.  (Id. at 5 ¶
13 15.)  In particular, the settlement agreement requires that at each institution identified in the
14 agreement, the CDCR shall make available to inmates emergency dental care twenty-four
15 hours per day, seven days per week, including having dentists go to a prison to provide
16 emergency treatment that a physician has deemed necessary.  (Id. at ¶ 15(a)-(b).)  According
17 to the terms of the settlement agreement, the requisite changes were to be implemented at
18 SVSP between July 1, 2006 and December 31, 2008.  (Id. at 4 ¶ 12.)

---

[5]Plaintiff has moved the Court to take judicial notice of the Perez settlement agreement.  Defendants have not opposed the motion.  A district court "may take judicial notice of proceedings in other courts, both within and without the federal judiciary system, if those proceedings have a direct relation to matters at issue."  Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007) (internal quotation and citations omitted).  As a general rule, however, the court may not take judicial notice of findings of fact in another court case for the truth of those facts.  M/V Am. Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1491 (9th Cir. 1983).  Here, the Perez settlement agreement is directly relevant to plaintiff's claim that SVSP prison officials were aware that the number of dentists available to attend to the emergency and acute dental needs of SVSP inmates was constitutionally inadequate.  Accordingly, while plaintiff may not rely on the factual findings in the Perez case to establish the truth of the facts he asserts herein, the Court will grant plaintiff's motion to take judicial notice of the settlement agreement entered into by the parties in Perez.

**DISCUSSION**

A.  Legal Standard

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©.  Material facts are those that may affect the outcome of the case.  Anderson, 477 U.S. at 248.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

It is the moving party's burden to establish that no genuine issue of material fact exists and that the moving party is entitled to judgement as a matter of law.  British Airways Board v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978), cert. denied, 440 U.S. 981 (1979).  The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

When the moving party bears the burden at trial – as with a plaintiff on a claim for relief – the burden of proof is to produce evidence sufficient to demonstrate that no reasonable trier of fact could find for the nonmoving party.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003).  A plaintiff must demonstrate that the evidence presented, taken as a whole, establishes beyond controversy every essential element of the claim.  Id.  A defendant can defeat a plaintiff's motion for summary judgment by demonstrating the evidence, as a whole, could lead a rational trier of fact to find in his favor.  Id.  In so doing, the party opposing summary judgment must direct the court's attention to specific triable facts.  Id. at 889.

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the

1 evidence submitted by the nonmoving party. Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th
2 Cir. 1999). The court's function on a summary judgment motion is not to make credibility
3 determinations or weigh conflicting evidence with respect to a disputed material fact. T.W.
4 Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

5 B.   Deliberate Indifference to Plaintiff's Serious Medical Needs

6 Deliberate indifference to a prisoner's serious medical needs violates the Eighth
7 Amendment's proscription against cruel and unusual punishment. Estelle v. Gamble, 429
8 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination
9 of two elements: the seriousness of the prisoner's medical need and the nature of the
10 defendant's response to that need. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992),
11 overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th
12 Cir. 1997) (en banc). A prison official acts with deliberate indifference if he knows that a
13 prisoner faces a substantial risk of serious harm and disregards that risk by failing to take
14 reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The prison
15 official must not only "be aware of facts from which the inference could be drawn that a
16 substantial risk of serious harm exists," but "must also draw the inference." Id.
17 Consequently, in order for deliberate indifference to be established, there must exist both a
18 purposeful act or failure to act on the part of the defendant and harm resulting therefrom.
19 McGuckin, 974 F.2d at 1060.

20 Prison officials act with deliberate indifference to a prisoner's serious medical needs
21 when they "deny, delay, or intentionally interfere with medical treatment," Hallet v. Morgan,
22 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation and citations omitted), or if prisoners
23 are unable to make their medical problems known to medical staff. Hunt v. Dental Dep't,
24 865 F.2d 198, 200 (9th Cir. 1989). Dental care is one of the most important medical needs of
25 inmates; consequently, the Eighth Amendment requires that prisoners be provided with a
26 system of ready access to adequate dental care. Id. Nevertheless, "delay in providing a
27 prisoner with dental treatment, standing alone, does not constitute an eighth amendment
28 violation." Id. Rather, a prisoner must show he was suffering from such severe dental

1 problems that defendants should have known the delay would cause a substantial risk of
2 serious harm. See id.; see also Hallett, 296 F.3d at 746 (holding prisoners "could not prove
3 an Eighth Amendment violation" in class action alleging systemically inadequate dental care
4 because they had "not demonstrated that delays occurred to patients with [dental] problems
5 so severe that delays would cause significant harm and that [d]efendants should have known
6 this to be the case").

7       Prison authorities have "wide discretion" in the medical treatment afforded prisoners.
8 Stiltner v. Rhay, 371 F.2d 420, 421 (9th Cir. 1967). Consequently, deliberate indifference is
9 not established by a showing of nothing more than either a difference of opinion between a
10 prisoner-patient and prison medical authorities regarding treatment, Franklin v. Oregon, 662
11 F.2d 1337, 1344 (9th Cir. 1981), or between medical professionals as to the need to pursue
12 one course of treatment over another, Toguchi v. Chung, 391 F.3d 1051, 1058-60 (9th Cir.
13 2004).

14 C.    Analysis

15       Plaintiff claims defendants acted with deliberate indifference to his serious medical
16 needs by failing to provide him with adequate dental care for a period of fourteen days. As
17 noted, plaintiff's claim is based on two distinct theories of liability: (1) defendants personally
18 knew of plaintiff's need for emergency dental care and failed to take action to prevent a
19 substantial risk of serious harm to plaintiff; and (2) defendants, in their supervisorial
20 capacities, failed to implement a system of adequate dental access and care for inmates'
21 emergency and acute dental needs at SVSP, knowing that such failure posed a substantial
22 risk of serious harm to prisoners suffering from severe dental injuries.

23       As set forth above, plaintiff has presented evidence that shows each of the four
24 individual defendants was made aware, at some point between January 19, 2005 and
25 February 1, 2005, that plaintiff was suffering and in extreme pain from an injured tooth, yet
26 failed to ensure plaintiff would be provided with emergency dental care in response to his
27 complaints. Additionally, plaintiff has presented evidence that shows the supervisorial
28 defendants knew there were not enough dentists available at SVSP to treat the emergency

10

and acute dental needs of the inmates, yet failed to take action to remedy the situation, resulting in serious injury to plaintiff.

In opposition, defendants argue they did not act with deliberate indifference because they did not know of and fail to take action to prevent a substantial risk of serious harm to plaintiff. In support thereof, defendants have presented evidence that shows: they were unaware of plaintiff's injury until January 23; plaintiff was responsible for their lack of prior knowledge because he failed to use the prison medical grievance process to make his medical needs known; once defendants learned of plaintiff's injury he was promptly provided with appropriate care by Dr. Wong on January 23, by Dr. Robinson on January 25, and again by Dr. Robinson on February 1; the delay between the scheduled treatment of plaintiff on January 28 and his receipt of treatment on February 1 was the result of a lockdown that prevented the provision of all dental services to inmates.

Based on the above, the Court finds defendants have raised a triable issue of fact with respect to whether their response to plaintiff's injury amounted to deliberate indifference. Specifically, taking defendants' version of the events as true, and construing all evidence in their favor, the Court finds a reasonable inference can be drawn therefrom that the treatment of plaintiff's injured tooth was reasonable under the circumstances. Consequently, as the question whether defendants acted with deliberate indifference to plaintiff's serious medical needs cannot be resolved on the record before the Court, plaintiff's motion for summary judgment will be denied.

D.   Referral to Pro Se Mediation Program

The Northern District of California has established a Pro Se Prisoner Mediation Program under which prisoner civil rights cases may be referred to a neutral Magistrate Judge for settlement proceedings. The Court finds the instant matter suitable for settlement proceedings prior to the commencement of trial proceedings. Accordingly, plaintiff's motion to set a pretrial conference and a trial date will be denied without prejudice, and the matter will be referred to Magistrate Judge Nandor J. Vadas for settlement proceedings as set forth below.

**CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. Plaintiff's motion for summary judgment is hereby DENIED.  (Docket no. 57.)

2. Plaintiff's motion to set a pretrial conference and a trial date is hereby DENIED. (Docket No. 61.)

3. This matter is hereby REFERRED to Magistrate Judge Nandor J. Vadas for settlement proceedings.  The proceedings shall take place within **sixty** days of the date this order is filed, or as soon thereafter as Magistrate Judge Vadas's calendar will permit. Magistrate Judge Vadas shall coordinate a place, time and date for one or more settlement conferences with all interested parties and/or their representatives and, within fifteen days of the conclusion of all settlement proceedings, file with the Court a report thereon.

<u>The Clerk is directed to serve Magistrate Judge Vadas with a copy of this order and to notify Magistrate Judge Vadas that a copy of the court file can be retrieved from the court's electronic filing database (ECF).</u>

This order terminates Docket Nos. 57 and 61.

IT IS SO ORDERED.

DATED: September 16, 2009

_____
MAXINE M. CHESNEY
United States District Judge

12